CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 29 2012

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **JEFFREY JASON GARDNER,** | ) | CASE NO. 7:12CV00108 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OPINION** |
| vs. | ) | |
| | ) | |
| **MIKE OSLIN, ET AL.,** | ) | By: James C. Turk |
| | ) | Senior United States District Judge |
| **Defendant(s).** | ) | |

Jeffrey Jason Gardner, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that prison officials denied him a prison job as a food service worker, in violation of his constitutional rights. After review of the record, the court summarily dismisses the action.

**I**

Gardner alleges the following sequence of events relevant to his claims. Gardner, an inmate at Keen Mountain Correctional Center (KMCC), wants a job in the kitchen. He states that kitchen jobs offer the highest pay and the longest hours of any job at KMCC, while providing inmates with skills that could help them get a job in the food service industry after release.

Gardner attaches to his complaint a memorandum citing an Implementation Memo for Virginia Department of Corrections (VDOC) Operating Procedure (OP) 841.2, which provides that "offenders will not be considered for a sensitive job, if within the past 10 years they have had [a]ny homicide offense, sexual offense, kidnapping, abduction, assault, escape, evading, elude or pattern of failure to appear." Compl. Attach. (ECF No. 1-3, p. 4). OP 841.2 lists some jobs designated as sensitive, but authorizes prison administrators to deem other job assignments

as sensitive and to "revise, on a position-by-position basis, the criteria and restrictions for sensitive positions as needed." Gardner admits that he was convicted of "sex crimes" in the Washington County Circuit Court, but argues that he is now eligible under OP 841.2 to hold a sensitive job because his offenses occurred more than ten years ago, between March 1, 1999 and August 29, 2000.[1]

On August 29, 2010, Gardner filed an application for a kitchen job. When other inmates asked Mike Oslin, the food service director, to hire Gardner, Oslin told them, "[N]o he writes more grievances than anyone." Compl. 2-3. Gardner also filed requests with several other officials for an "Administrative Job Assignment, . . . "to no avail." Compl. 3. Gardner states that inmates with convictions for homicide, sexual offenses, and abduction work in the kitchen and that he poses less of a threat than they do.

In August 2011, Gardner filed an informal complaint, claiming that Oslin had denied him a job in the kitchen because of his grievances. Oslin's written response on the complaint stated: "JOBS IN FOOD SERVICE ARE ASSIGNED IN STRICT ACCORDANCE WITH OP 841.2." ECF No. 2, p. 3. In his regular grievance, Gardner stated that Oslin's decision against giving Gardner a job violated his due process and equal protection rights. Id. at 4. Oslin interviewed Gardner about his grievance on September 2, 2011, and told Gardner he did not like Gardner's charges and "writing grievances doesn't get anyone any favors." Compl. 3. In the Level I response, Warden Braxton ruled Gardner's grievance to be unfounded. Quoting parts of OP 841.2 about officials' ability to revise criteria for sensitive positions , the warden stated that "KMCC defines the Food Service as a sensitive area, [in] which you are ineligible for

---

[1] Court records available on line for the Washington County Circuit Court indicate that in August 2002, Jeffrey Jason Gardner was convicted of several sexual offenses.

2

employment due to your criminal history." Id. On appeal, the regional director upheld the warden's finding.

Gardner sues Oslin, the warden, the regional director, and VDOC Director Harold Clarke. He asserts that the defendants' actions deprived him of due process, violated equal protection principles, and constituted retaliation. As relief, Gardner seeks a prison job with long hours and high pay and monetary damages for denial of employment.

## II

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

### A. Due Process

Gardner claims that under state law, prison authorities are required to provide inmates with job opportunities, and defendants' failure to provide him the job for which he is eligible and suited violates due process. Gardner is mistaken.

While the Virginia statutes Gardner cites require prison officials to provide work assignments and other rehabilitation programs for inmates, these statutes also grant officials vast discretion in managing prison resources and in classifying inmates for participation in such activities. See Va. Code Ann. §§ 53.1-32, 53.1-32.1, 53.1-41. Officials must classify an inmate for work assignments "according to background, aptitude, education, and risk and . . . needs," while also considering "the availability of resources and sufficient program assignments,"

3

§ 53.1-32.1(A) and (B); and officials must provide inmates with work opportunities only "to the extent feasible," § 53.1-41(A). Thus, contrary to Gardner's assertions, these statutes do not create any entitlement under state law for him to have any particular prison job or any job at all.

Where inmates' classifications and work assignments are "matters of prison administration, within the discretion of the prison administrators," inmates also have no constitutionally protected right to job opportunities or to any particular job while incarcerated. Bulger v. United States Bureau of Prisons, 65 F.3d 48, (5th Cir. 1995) (finding no liberty or property interest in having prison job) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995); Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976)); Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978). Consequently, prison officials may generally terminate an inmate from his job, or refuse to grant him a particular job, for any reason without offending federal due process principles. Bulger, 65 F.3d at 50. Under these principles, Gardner's federal due process claims have no merit and must be summarily dismissed, pursuant to § 1915A(b)(1), as legally frivolous.

B. Equal Protection

Gardner also asserts a "class-of-one" equal protection claim, arguing that officials denied him a kitchen job because of his sex offenses, even though other sex offenders work in the kitchen. To state a class-of-one claim, Gardner must allege facts demonstrating that 1) he was intentionally treated differently from others similarly situated and 2) if officials applied different standards for kitchen job assignment in his case, there was no rational basis for the difference in treatment. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (regarding standard for "class-of-one" claim); Moss v. Clark, 886 F.2d 686, 690-91 (4th Cir. 1989) (finding prisoner equal protection claim requires showing that plaintiff is similarly situated and unequal treatment is not rationally related to a legitimate governmental purpose).

Gardner does not allege facts stating an equal protection claim under these principles. First, Gardner has not shown that he is similarly situated to the other inmates working in the kitchen. Gardner does not allege that any of these workers has been convicted of the same offenses as Gardner or that they have similar sentences or criminal histories. Second, prison officials clearly have legitimate security interest in restricting kitchen jobs to inmates convicted of less severe crimes or sentences, given the fact that such inmates work in close proximity to other inmates and staff and have access to food items to be served to other inmates and staff. The court dismisses Gardner's equal protection claim without prejudice, pursuant to §1915A, for failure to state a claim.

## C. Retaliation

To succeed on a § 1983 claim that prison officials retaliated against him, an inmate must allege facts showing that his exercise of a constitutional right was a substantial factor motivating the retaliatory action. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993) (citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977). He must present more than conclusory allegations of retaliation. Adams, 40 F.3d at 74.

Gardner fails to state facts on which he could prove retaliation. It is clear that prison officials denied him a kitchen job because his convictions for sex offenses were imposed less than ten years ago. That fact alone disqualifies Gardner for certain job assignments at KMCC. Moreover, Gardner was not exercising a constitutional right merely by filing grievances, because inmates have no constitutional right to a prison grievance procedure. Adams, 40 F.3d at 75. Gardner states no facts suggesting that officials failed to give him a kitchen job because Gardner

5

complained to officials about any particular issue in a grievance. The court dismisses Gardner's retaliation claim without prejudice, pursuant to §1915A, for failure to state a claim.

III

For the reasons stated, the court dismisses Gardner's complaint without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 29th day of May, 2012.

/s/ James C. Turk
Senior United States District Judge